IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| SHARON A. RANDOLPH | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: RWT-13-2069 |
| CARUSO HOMES, INC., *et al.*, | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

In her Amended Complaint, *pro se* Plaintiff Sharon A. Randolph asserts claims against Defendants Caruso Homes, Inc., Chris Block, and Nancy Walsh for race and gender discrimination under Title VII, wrongful termination, fraud, and retaliation. ECF No. 4. Before the Court is Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment. ECF No. 11. Plaintiff filed an Opposition on February 14, 2014, ECF No. 13, and Defendants filed a Reply on March 4, 2014. ECF No. 15. There are no material facts in dispute, and Defendants are entitled to judgment as a matter of law. Accordingly, Defendants' Motion will be granted.

## BACKGROUND

Sharon A. Randolph ("Randolph") was hired as a sales manager by Chris Block ("Block") of Caruso Homes, Inc. ("Caruso Homes"), on November 23, 2010. ECF No. 4 at 4. Randolph appears to allege that she suffered discriminatory treatment throughout the entirety of her brief employment at Caruso Homes. *See* ECF No. 4 at 2 ("Race and Gender Discrimination violations occurred during the timeframe of November 23, 2010 to February 4, 2011."). However, the only specific alleged discriminatory act the Court can glean from the Amended

Complaint, prior to Randolph's termination, is that Caruso Homes failed to submit a certification Randolph was required to have to act as a sales manager, whereas Caruso Homes did submit the certifications for white sales managers.[1]  ECF No. 4 at 3.

Caruso Homes terminated Randolph on February 4, 2011, 68 days after she was hired. *Id.*  On that same date, she executed a Separation Agreement and Release (the "Release") in which she agreed to release all claims against Caruso Homes in exchange for 2 weeks of base pay.  ECF No. 11-3.  Pertinent to the pending Motion, the express terms of the Release provide that Randolph has 45 days from the date of the Release to sign it, that she may wish to consult an attorney before signing it, and that she has 7 days from the date she signs the Release to revoke it.  *Id.*  Randolph accepted the severance payment. ECF No. 11-5.

On August 3 and August 12, 2011, Randolph filed charges of race and gender discrimination with the Prince George's County Human Relations Commission ("PGCHRC") and Equal Employment Opportunity Commission ("EEOC"), respectively.  ECF No. 11-5 at 2-3.  On October 31, 2012 PGCHRC closed the case, determining that the Release precluded its enforcement and jurisdiction over the case.  ECF No. 11-6.  EEOC issued Randolph a right to sue.  ECF No. 4 at 3.

Defendants argue in their Motion that Randolph's claims are barred by the Release.  ECF No. 11-1 at 5-8.  As to Randolph's fraud claim, Defendants assert she has failed to plead it with sufficient particularity under Federal Rule of Civil Procedure 9(b).  *Id.* at 8-11.  As to Randolph's retaliation claim, Defendants assert Randolph failed to exhaust her administrative remedies, and that the claim is now time-barred.  *Id.* at 11-12.

---

[1] Randolph asserts that the certifications Caruso Homes failed to submit on her behalf were required for her to do her job, but it appears that in actuality she did act as a sales manager during her entire tenure with Caruso Homes. Randolph does not make any specific allegations of the damages she suffered as a result of the alleged failure of Caruso Homes to submit her certifications.

In Randolph's Opposition, she claims that she signed the Release under duress, that she "was not allowed time to think about signing" the Release, was "not allowed or offered the legal right to view" the Release with an attorney, and "was not allowed a period of several days to change her mind after the release was signed."  ECF No. 13 at 2.   According to Randolph, this makes the Release invalid.  *Id.*   Randolph's Opposition also advances a number of new allegations, facts, and legal theories, and is accompanied by an avalanche of exhibits, many of which have no significance to this case.  Defendants filed a Reply, addressing Randolph's claim of duress, and generally reasserting the arguments from the pending Motion.

## STANDARD OF REVIEW

### I.     Consideration of Release Requires Conversion to Motion for Summary Judgment

Each of the parties has submitted for consideration, and the Court will consider in connection with the pending Motion, exhibits and matters outside of the pleadings.  Accordingly, the Motion will be treated as a Motion for Summary Judgment.  Fed. R. Civ. Pro. 12(d).  Specifically, the Defendants assert that Randolph's claims are barred because of her execution of the Release.  ECF No. 11-1  at 5-10.  Defendants argue that the Court can appropriately consider the Release without converting the Motion into a motion for summary judgment.  *Id.* at 8.  The Court disagrees.  It is true that the Court can consider matters and exhibits outside the Complaint when considering a motion to dismiss if they are "central to plaintiff's claim" and "sufficiently referred to in the complaint."  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2006).  In each of the cases Defendants cites for the proposition that a release can be properly considered on a motion to dismiss, the release agreement is explicitly referred to in the complaint.  *See Taylor v. Northrup Grumman Systems Corp.*, CIV. JKB-13-1832, 2013 WL 4781094 at *4n.3 (D. Md. Sept. 5, 2013); *Hewett v. Leblang*, 12 CIV. 1713 PKC, 2012 WL

2820274, *6 (S.D.N.Y. July 5, 2012) ("The Complaint discusses the Settlement Agreement and the Separation Agreement and lists them as exhibits."); *Matusovsky v. Merrill Lynch*, 186 F.Supp. 2d 397, 400 (S.D.N.Y. 2002) ("Here, Matusovsky explicitly referred to the General Release in his complaint."); *Powe v. City of Chicago*, 1996 WL 99711, *3 (N.D. Ill. 1996) ("The plaintiff conceded in her complaint that she entered into the Settlement Agreement with the defendant."). Here, the body of the Complaint does not reference the Release at all. The Release was not attached to the Complaint. There are exhibits included with the Complaint that do reference the Release. However, Defendants have cited no authority for the proposition that documents not actually referred to in a complaint, nor attached to it, but merely referred to by documents attached to it, are "sufficiently referred to in the complaint" for purposes of considering them on a motion to dismiss. *Philips*, 572 F.3d at 180. Accordingly, the Court will treat the pending Motion as a Motion for Summary Judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Disputes of material fact are genuine if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In order to avoid summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 256. While the court must view the evidence in the light most

favorable to the nonmoving party, *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006), it must also "prevent factually unsupported claims and defenses from proceeding to trial," *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)) (internal quotation marks omitted).

Where, as here, a motion to dismiss is being converted into a motion for summary judgment, and is being acted on prior to any opportunity for formal discovery, the Court must use its discretion with "caution and attention to the parties' procedural rights." 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2011 Supp.). If the non-movant opposes summary judgment under Rule 56 because they have insufficient factual information, they are required to file an affidavit or declaration explaining why, "for specified reasons it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Randolph has not submitted such an affidavit, nor has she made any reference in any of her filings to a need for more discovery to oppose the Motion. Because the Motion was captioned in the alternative, Randolph is "deemed to be on notice that conversion under Rule 12(d) may occur." *Hart v. Lew*, 973 F. Supp. 2d 561, 572 (D. Md. 2013). Moreover, after Defendants filed their Motion, Randolph was sent a letter explaining the necessity of responding to the Motion, including, if necessary, with "affidavits;…declarations;…or other materials contesting the affidavits, declarations, or records filed by the defendant(s). ECF No. 12. That letter also contained the entire text of Rule 12 and Rule 56. *Id.* Although the Court is mindful of the need to give *pro se* litigants leeway with regard to procedural rules, it is reasonable to expect that *pro se* litigants will comply with rules that are specifically pointed out to them. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("we have never suggested that procedural rules in ordinary

civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). Accordingly, the Court will decide the alternative Motion for Summary Judgment on its merits under the assumption that Randolph does not need more time for discovery to oppose the Motion.

## ANALYSIS

Randolph executed a Release that, if valid, would bar the claims she now attempts to bring against Defendants. In their Motion, Defendants argue that Randolph's Amended Complaint must be dismissed because the Release she executed bars her claims. ECF No. 11-1 at 5-10. After a review of the record and the undisputed facts in this case, the Court has determined that the Release is valid, and that accordingly all of her claims in this lawsuit are barred.[2]

### I. Randolph Did not Execute the Release Under Duress

Randolph argues in her Opposition that the Release is invalid because it was signed under duress.[3] ECF No. 13 at 2. According to Randolph, she was under duress because she

> was not allowed time to think about signing the release agreement, in fact she was pressured to sign on the spot and threatened that if she did not sign she would not be paid even for the week she had already worked. Mr. Block frankly said if you don't sign you don't get paid anything.

*Id.*

In Maryland, duress is "a wrongful act which deprives an individual of the exercise of his free will." *Eckstein v. Eckstein*, 379 A.2d 757, 761 (Md. Ct. Spec. App. 1978). The wrongful act may take the form of an "improper threat which leaves the victim with no reasonable alternative

---

[2] Because all of the claims in Randolph's Amended Complaint are barred by the Release, the Court will not consider the other grounds Defendants assert in favor of dismissal or summary judgment.

[3] Defendants argue that the Court should not consider any new theories or evidence submitted in her Opposition. ECF No. 15 at 2. If the Court were treating Defendants' Motion as a Motion to Dismiss, this would be true. *Love v. Smith*, 2005 WL 1163143, *2n.1. However, because the Motion is being treated as a Motion for Summary Judgment, the Court will consider any new facts, such as duress, asserted by Randolph relevant to Defendants' Motion.

other than to execute the agreement."[4]  *Employers Ins. Of Wasau v. Bond*, 1991 WL 8431, *2 (D. Md. 1991).  This can take the form of "economic duress," which is apparently the basis of Randolph's assertion of duress here.  *Id.*  However, the potential financial impact from the loss of a job is not, by itself, sufficient to set aside a contract for duress.  *See Cassiday v. Greenhorne & O'Mara, Inc.*, 220 F. Supp. 2d 488, 492 (D. Md. 2002).  Otherwise, nearly every settlement ending an employment dispute would be voidable at the election of the employee.  *See id.*

Assuming the truth of Randolph's version of events,[5] she was called in on her day off, informed she was being terminated, presented with the Release, and told that if she signed it she would receive severance pay, and if she did not sign it she would receive nothing.  ECF No. 13 at 2.  She was also told she had to sign it on the spot.  *Id.*  This does not constitute duress. Defendants were under no obligation to pay Randolph anything following her termination.  Nor were they under any obligation to give her an extensive period of time to consider the Release, and in any event, contrary to her assertion, she had seven days *after* signing the Release to reconsider and revoke it.  ECF No. 11-3 at 3.  Given these undisputed facts, Randolph's claim that she signed the Release under duress is without merit.

## II.  Randolph's Execution of the Release was Knowing and Voluntary

Even if Randolph's execution of the Release was not obtained under duress, her execution of the Release must still have been knowing and voluntary.  *See, e.g. Cassiday v. Greenhorne & O'Mara, Inc.*, 220 F. Supp. 2d 488, 493 (D. Md. 2002), *aff'd* 63 Fed. App'x 169 (4th Cir. 2003).  The validity of the Release is determined by reviewing the totality of the

---

[4] The wrongful act may also involve the threat of physical force.  *See Employers Ins. Of Wasau v. Bond*, 1991 WL 8431, *2 (D. Md. 1991).  There is no allegation here that any such threat was made.
[5] The Court notes, however, that Randolph has asserted in her Opposition these facts, but has not provided support in the form of affidavits or declarations, stipulations, admissions, or other materials.  *See* Fed. R. Civ. Proc. 56(c)(1)(A).

circumstances surrounding its execution.[6]  *Cassiday*, 220 F. Supp. 2d at 494.  The factors to be

considered are (1) Randolph's education and business experience; (2) the respective roles of

Caruso Homes and Randolph in determining the terms and conditions of the Release; (3) the

clarity of the Release; (4) the time Randolph  had to study the Release; (5)  whether Randolph

had the advice of counsel; (6) whether the employer encouraged the employee to seek the advice

of counsel and whether the employee had sufficient time to do so; and (7) the waiver's

consideration.  *Id.*  The list of factors is non-exclusive, and no single factor is determinative.  *Id.*

Neither party gives any information on Randolph's education and level of business

experience, but she apparently had at least enough education to qualify for a position as a sales

manager.  As to the respective roles of the parties in determining the terms of the Release, it

seems clear that Randolph had no involvement in setting the terms of the Release.  As to the

clarity of the Release, it is less than three pages long, and in clear language indicates Randolph is

releasing all claims she might have.  As to the time Randolph had to study the Release, she states

that she "was not allowed time to think" and "was pressured to sign on the spot," and Caruso

Homes "refused to provide a copy of the release after signing."[7]  ECF No. 13 at 2.  Therefore, it

---

[6] Defendants attempt to assure the Court that *O'Shea v. Commercial Credit Corp.*, 930 F.2d 358 (4th Cir. 1991) remains good law in the Fourth Circuit, and that ordinary contract principles govern the consideration of whether Randolph's execution of the Release was knowing and voluntary.   In *O'Shea* the Fourth Circuit held that the validity of a waiver under the Age Discrimination in Employment Act was analyzed using ordinary contract principles.  *Id.* at 362.  While that holding was superseded as to the ADEA by statutory amendments, Defendants argue it still requires the application of ordinary contract principles to waivers "in other types of discriminating cases."  ECF No. 11-1 at 6.  The Court is not so sure.  While it is true that the holding of *O'Shea* was only specifically superseded as to claims under the ADEA, it also appears the Fourth Circuit would analyze Title VII claims under the totality of the circumstances test as well.  *See Cassiday v. Greenhorne & O'Mara, Inc.*, 63 Fed. App'x 169, 169-70 ("We also conclude the district court properly determined, *based on the totality of the circumstances*, that Cassiday knowingly and voluntarily waived her rights under Title VII.") (emphasis added).
[7] The Defendants invite the Court to assume, based on the express wording of the Release, that Randolph actually had forty-five days to consider the Release.  However, just because the terms of the Release recite that Randolph had 45 days before executing the agreement to consider whether to sign it does not mean the Defendants actually *gave* Randolph those 45 days.  Randolph asserts that she was told she had to sign that day, and given that she actually signed that day instead of availing herself of the forty-five day leads the Court to the reasonable inference, drawn in her favor, that she was actually told to sign that day or she would not get any severance payment.  *Cf. Cassiday*, 220 F. Supp. 2d at 493 (considering, in analyzing the amount of time a plaintiff had to review a release, the actual amount of time the plaintiff took to review, not the amount of time the terms of the release purported to give).

appears that Randolph did not have much time to study the Release.[8]   It is undisputed that

Randolph did not have the advice of counsel.   However, the express terms of the Release

encouraged her to seek counsel, and she had at least seven days following the execution of the

Release to do so.   Moreover, Randolph claims she was "not allowed a period of several days to

change her mind after the release was signed."   *Id.*   This is patently untrue.   The terms of the

Release expressly provide that it is revocable for up to seven days after signing.   ECF No. 11-3.

Randolph had seven days to change her mind, revoke the Release, and preserve any claims she

had against Caruso Homes.   Finally, Randolph received adequate consideration for her waiver of

claims in the form of two weeks of pay.   *Id.*   To be sure, this is not a huge sum of money.

However, as she was an at-will employee, Caruso Homes could have terminated Randolph's

employment at any time for any reason without giving her anything.   *See Melanson v.

Browning-Ferris Industries, Inc.*, 281 F.3d 272, 278 (1st Cir. 2002) (finding that $1,600

consideration for release of claims is sufficient for an at-will employee where the employer was

not obligated to provide any benefit).

Given these circumstances, the Court believes Randolph's execution of the Release was

knowing and voluntary.   Certainly some of the factors cut in her favor.   But knowing and

voluntary is not a counting game.   *See Cobb v. Porter*, CIV. 1:04CV128, 2006 WL 2457812, *5

(W.D.N.C. 2006) ("However, the question here is not one of simple mathematics, but rather of

the actual facts and circumstances surrounding Plaintiff's execution of the waiver.").   The Court

notes that Randolph asserted in the Amended Complaint that she was subject to a "continued

pattern of animus and disparate treatment" throughout her time at Caruso Homes.   ECF No. 4

at 5.   If she was indeed subject to continued discrimination, as she claims, she surely must have

[8] The Court notes, however, that Randolph does not allege that she was not allowed to read the release, only that she
did not have sufficient time to think about it.

9

been aware she had potential claims against Caruso Homes for discrimination.  The Court also finds it relevant that, as Defendants point out, Randolph has asserted Title VII claims against former employers in the past.  *See Randolph v. Ryland Homes*, 8:04-cv01664-AW; *Randolph v. NV Homes*, 8:03-cv-01082-AW.  Therefore, she is certainly well aware of what her rights are if she feels she has been discriminated against, and of her ability to bring a lawsuit to remedy that discrimination.  While she may have felt pressure to sign the Release, or risk forfeiting her severance package, Randolph had at least seven days in which to assess her situation, draw on her past experience litigating similar claims, think more clearly about her time at Caruso Homes and any claims she might be able to bring, and decide to revoke the Release in favor of pursuing other remedies.  She chose not to do so.  By signing the Release, failing to revoke it, and accepting payment under it, she chose to forego the uncertainty and expense of a lawsuit in favor of the certainty of a severance payment.  The Court will not allow Randolph, having knowingly and voluntarily waived her rights in exchange for a payment she has long since accepted, attempt to assert those rights now.

## CONCLUSION

Randolph has executed a valid Release of claims arising from her employment with Caruso Homes, and she is legally barred from making these claims. Accordingly, the Court will grant the Defendants' alternative Motion for Summary Judgment [ECF No. 11] and enter judgment in favor of Defendants.  A separate Order follows.


Date:  September 16, 2014

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE